**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GARY ROHEY,

          Plaintiff,

 - v -                 Civ. No. 5:09-CV-1063
                        (RFT)[1]

MICHAEL J. ASTRUE, *Comm'r of Social Security*,

          Defendant.

**APPEARANCES:**              **OF COUNSEL:**

OLINSKY LAW GROUP          HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION    JOHN M. KELLY, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

   Plaintiff Gary Rohey brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, claiming that the Commissioner of Social Security improperly denied his application for Supplemental Security Income ("SSI"). For the reasons that follow, this Court upholds the Commissioner's decision denying Social Security benefits.

---

[1] On February 10, 2012, with the consent of the parties, the Honorable Lawrence E. Kahn, United States Senior District Judge, referred the matter to this Court to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. *See* Dkt. No. 13.

# I. BACKGROUND

## A. Facts

Rohey, born on February 17, 1958, was forty-seven years old when he protectively filed his application for SSI benefits on August 18, 2005. Dkt. No. 8, Admin. Transcript [hereinafter "Tr."], at pp. 20 & 68. He completed high school and one year of college. *Id.* at pp. 86 & 288. His work history is sporadic, short term, and inconsequential, and Plaintiff concedes that he has no past relevant work within the meaning of the Social Security Regulations. *Id.* at pp. 81-82 & 127-30; Dkt. No. 10, Pl.'s Br., at p. 2. For a complete picture of the relevant background in this case, we refer the reader to the section of facts set forth in the Plaintiff's Brief, under the heading, "STATEMENT OF FACTS," which are hereby adopted by the Court. *See* Pl.'s Br. at pp. 2-9. Generally, Rohey alleges a disability due to bipolar disorder, depression, generalized anxiety disorder, post-traumatic stress disorder, narcissistic and antisocial personality traits, and degenerative joint disease. *Id.* at pp. 1-2 & 12-13. Plaintiff has a history of drug and alcohol abuse.

## B. Procedural History

Plaintiff protectively applied for SSI benefits on August 18, 2005, alleging a disability beginning August 31, 2001. Tr. at pp. 68-69. The Social Security Administration denied his application for benefits on December 12, 2005, and he filed a timely *pro se* request for a hearing before an Administrative Law Judge (ALJ). *Id.* at pp. 35-39. The Hearing was presided over by ALJ Joseph G. Medicis, Jr., and Rohey, without representation, participated by telephone from a recovery center. *Id.* at pp. 275-306. On May 7, 2008, ALJ Medicis denied Plaintiff's request for Social Security benefits. *Id*. at pp. 17-33.

Rohey filed a request for review by the Appeals Council on June 23, 2008. *Id.* at p. 15.

While the request for review was pending, Rohey obtained his current legal counsel, who submitted a brief on his behalf in support of the request. *Id.* at pp. 267-74. Plaintiff's request was subsequently denied on May 22, 2009. *Id.* at pp. 6-9. Thus, rendering the decision of the ALJ the Commissioner's final decision in the case. Exhausting all of his options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence, or where a reasonable basis for doubt exists as to whether the correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

**B. Determination of Disability**

The SSI program, 42 U.S.C. § 1381, *et seq.*, is a federal program providing benefits to needy aged, blind, or disabled individuals who meet the statutory income and resource limitations. 20 C.F.R. § 416.110. The SSI program was designed to replace the former federally assisted state welfare programs for the aged, blind, or disabled. *Id.* While the SSI program has special eligibility requirements that relate to establishing need,[2] the requirements for establishing disability, found at 42 U.S.C. § 1382c, are identical to the requirements under Title II of the Social Security Act for entitlement to disability insurance benefits. *See* 42 U.S.C. § 423(d). Therefore, the vast case law interpreting the disability provisions under Title II may be relied upon in this case. *See Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (noting that decisions under Titles II and XVI are cited interchangeably).

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id.* at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v.*

---

[2] SSI benefits may not be paid unless the claimant meets the income and resource requirements of 42 U.S.C. §§ 1382a, 1382b, and 1382c(a)(3)(A).

*Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at § 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a).

-5-

impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Medicis's Findings

Using the five-step disability evaluation, the ALJ found that: 1) Rohey had not engaged in any substantial gainful activity since August 18, 2005, the application date; 2) he has severe medically determinable impairments, namely, drug abuse, alcoholism, bipolar disorder, and degenerative joint disease; 3) his severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation Part 404; 4) he retained the residual functional capacity to lift, push, pull, and/or carry twenty pounds occasionally and ten pounds frequently, and stand, sit, and/or walk six hours in an eight-hour work day – in short, Rohey could perform simple repetitive work – but because of his drug and alcohol use, he could not perform this work on a sustained basis; and 5) in light of Rohey's lack of relevant past work experience, his age, education, and RFC, no jobs exist in significant numbers in the national economy that he could perform. Tr. at pp. 20-29. Therefore, ALJ Medicis determined that Plaintiff is disabled within the framework of Medical-Vocational Rule 202.13 and Social Security Ruling 85-15. However, the ALJ also determined that if Rohey stopped using drugs and alcohol, he would be able to perform work on a sustained basis and would not be disabled. *Id.* at pp. 29-32. Thus, because Rohey would not be disabled if he stopped his substance abuse, and because the substance

abuse disorder is a contributing factor material to Plaintiff's disability determination, Rohey is not considered to be disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the ALJ's decision. *Id.* at p. 32. After reviewing the administrative transcript, this Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record.

### D. Rohey's Contentions

Plaintiff contends that the ALJ's decision should be reversed because the ALJ: 1) failed to find Rohey's depression and other mental impairments to be severe impairments; 2) failed to apply the special technique to evaluate Rohey's mental limitations; and 3) failed to follow the appropriate legal standards when he found Rohey would not be disabled if he stopped using drugs or alcohol. Pl.'s Br. at pp. 12-20. The Court will consider each of these contentions.

#### 1. Step Two – Severe Impairments

Plaintiff claims that ALJ Medicis erred when he failed to include diagnoses of depression, post-traumatic stress disorder, narcissistic disorder, generalized anxiety disorder, and antisocial personality traits in his severity determination at Step Two of the disability evaluation. Pl.'s Br. at p. 12.

At Step Two of the disability evaluation, the ALJ must determine whether the individual has an impairment or combination of impairments that are severe. 20 C.F.R. § 416.920. If a claimant has multiple impairments, the combined effect of all impairments should be considered "without regard as to whether any such impairment, if considered separately, would be of sufficient severity." *Id.* at § 416.923; *see also Ferris v. Asture*, 2009 WL 3075587, at *10 (N.D.N.Y. Sept. 23, 2009). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight

abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling 85-28, 1985 WL 56856, at *3, *Titles II and XVI: Medical Impairments That Are Not Severe* (S.S.A. 1985)).

Here, it is clear that ALJ Medicis considered the medical testimony and Plaintiff's mental condition as a whole. For example, the ALJ pointed out that Plaintiff was hospitalized for suicidal ideation and depression in September 2006 and eventually received outpatient mental health treatment. Tr. at pp. 23, 27, & 247-66. The ALJ also explicitly considered clinical findings that "included an unkempt appearance, loose associations, a sad and labile affect . . . a depressed mood, poor insight and judgment, narcissism, grandiosity, irritability, hostility, anger, a flat and despondent affect . . . [and] paranoia." *Id.* at p. 23. Accordingly, the record before the Court indicates that the ALJ, by examining Plaintiff's diagnoses and clinical findings, and by finding that Rohey suffered from drug abuse, alcoholism, and bipolar disorder, properly considered the nature and severity of Plaintiff's mental condition.

Plaintiff takes umbrage with the fact that ALJ Medicis did not find Plaintiff's depression to be a severe impairment. *See* Pl.'s Br. at pp. 12-15. However, as stated above, the ALJ found that Plaintiff suffered from bipolar disorder and that it was a severe impairment. It is evident that depression is included as a symptom in a diagnosis of bipolar disorder: "any of several mood disorders usually characterized by alternating periods of depression with mania or hypomania." THE AMERICAN HERITAGE MEDICAL DICTIONARY 100 (Updated Edition 2007). Accordingly, the ALJ's decision not to specifically include depression as a separate severe impairment lends no support to Plaintiff's contention that the ALJ erred in making his determination.

Furthermore, Plaintiff points to diagnoses made in the record that he claims the ALJ did not properly consider. For instance, Plaintiff alleges that the ALJ failed to properly consider the mental residual functional capacity assessment of Dr. Zenaida Mata, the non-examining, state agency reviewing physician. Pl.'s Br. at pp. 13-14. However, the ALJ is not required to "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability" when "the evidence of record permits [the Court] to glean the rationale of an ALJ's decision[.]" *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). The ALJ adequately laid out the testimony before him, and, from the decision, this Court can determine that substantial evidence in the record supports the ALJ's determination as to Plaintiff's severe impairments and that the correct legal standard was applied.

## 2. Mental Limitations

Next, Plaintiff claims that the ALJ did not apply the proper legal standards to evaluate his mental impairments. Specifically, Plaintiff claims that the ALJ failed to apply the "special technique" he is required to engage in when assessing the limitations imposed by a claimant's mental impairments Pl.' Br. at p. 15.

When evaluating the severity of claimant's mental impairments, 20 C.F.R. § 416.920a directs the ALJ to follow a special technique, involving "rat[ing] the degree of functional limitation resulting from the impairment(s)" in the context of "four broad functional areas": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* at § 416.920a(b)(2), (c)(3); *see also Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked,

and extreme." 20 C.F.R. § 4920a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe . . . .'" *Kohler v. Astrue*, 546 F.3d at 266 (citation omitted). However, if the claimant's mental impairment is deemed severe, the ALJ must determine whether the impairment meets or equals the severity of a mental disorder listed in § 12.04 of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.920a(d)(2).

Plaintiff admits that the ALJ "discussed these factors at step 3[.]" *See* Pl.'s Br. at p. 16 (citing Tr. at pp. 24-25). This Court agrees. ALJ Medicis explicitly described Plaintiff's impairments, including pointed consideration of his substance abuse disorder and Plaintiff's one-to-two episodes of decompensation of an extended duration, and found that Plaintiff possessed no more than mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, and pace. *See* Tr. at p. 24. However, Plaintiff contends, citing Social Security Rule 96-8p, that the ALJ's use of the limitations identified in "paragraph B" and "paragraph C" criteria should not have been used in "an RFC assessment but are [instead] used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process, [as] the mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C." Pl.'s Br. at 16.

The Court agrees with Plaintiff's statement of the law, and, as even a cursory inspection of the ALJ's decision reveals, so does ALJ Medicis. In his decision, the ALJ pointed out that the degree of limitations in the four specified categories were not part of his RFC assessment, and that

the mental RFC assessment "requires a more detailed assessment" at the fourth and fifth steps of the sequential evaluation. Tr. at p. 25. And, in rendering his RFC statement, which he applied at Steps Four and Five, the ALJ provided a more detailed explanation for both the physical and mental aspects of his RFC finding. *See id.* at pp. 25-28 ("Given the consultative examiner's opinion, the State review psychiatrist's opinion, the claimant's admitted drug abuse and alcoholism, and the claimant's repeated rehab admissions, the above mental residual functional capacity finding is supported."). Plaintiff's claim is accordingly meritless.

### 3. Materiality of Drug and Alcohol Abuse

Lastly, Plaintiff claims that the ALJ erred in his determination that there would be a significant number of jobs in the national economy that Plaintiff could perform such that Plaintiff would not be disabled within the meaning of the Act if he stopped his substance abuse. Pl.'s Br. at pp. 17-20. Specifically, Plaintiff's argument appears to be bifurcated. First, he disputes the ALJ's factual conclusion regarding the severity of Plaintiff's limitations if he stopped his drug and alcohol use. Second, Plaintiff claims that the ALJ failed to develop the record with regard to Plaintiff's functioning during periods when he is not using drugs or alcohol. We address these claims *seriatim*.

Plaintiff contests the ALJ's factual conclusion that Plaintiff would be able to perform simple repetitive work on a sustained basis if he abstained from substance abuse. Pursuant to 42 U.S.C. § 423(d)(2)(C), "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Accordingly, if the ALJ finds that the claimant is disabled, and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ "must determine whether [that] drug addiction or alcoholism is a contributing factor material to the

*-11-*

determination of disability." 20 C.F.R. § 404.935(a). The "key factor" in this determination is "whether [the Commissioner] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 404.935(b)(1).

As noted above, the ALJ progressed through the sequential evaluation and determined at Step Five that Plaintiff was disabled. Tr. at pp. 23-29. The ALJ then examined Plaintiff's limitations without the effects of Plaintiff's substance abuse and determined that Plaintiff would not be disabled if he did not use drugs and alcohol. *Id.* at pp. 29-32.

The record supports the ALJ's determination. Doctor Melvin Zax, the consultative examiner who saw Plaintiff on October 17, 2005, noted that Plaintiff "began drinking at age 18 and at the same time began using marijuana, at the present time . . . drinks as much as he can get on a daily basis [and] also uses marijuana when that is available;" he opined that "the claimant is bright enough to follow and understand simple directions[, but h]e has been a longstanding alcoholic and drug user and seems to have absolutely no interest in changing that." *Id*. at pp. 164-67. Doctor Zenaida Mata, a psychiatric state agency consultant, indicated on December 7, 2005, that Plaintiff had no more than moderate limitations such that he was capable of simple, repetitive, entry-level work, but notes that "no information on his file . . . will support that he has been drug free for at least a month." *Id.* at p. 207. Upon his admission to Clifton Springs Hospital and Clinic on October 11, 2006, Plaintiff stated that he was "here because of [his] alcoholism." During this inpatient rehabilitation, Plaintiff scored a low GAF[4] rating and was diagnosed with, *inter alia*, alcohol dependence. *Id.* at pp. 234,

---

[4] The GAF, or Global Assessment of Functioning, is a scale promulgated by the American Psychiatric Association to assist "in tracking the clinical progress of individuals [with psychological problems] in global terms." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR"). The scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health.

238-39, & 241. Lastly, Plaintiff's treating psychiatrist at Cayuga Addiction Recovery Services, Doctor Bezirganian, stated on September 27, 2007 and on January 10, 2008, that he did not believe that Plaintiff was "psychiatrically disabled as far as employment goes and does not have a major mental illness." *Id.* at pp. 222 & 225. This assessment was made during a period of time that Plaintiff was not abusing alcohol. *Id.* at p. 293. The ALJ, considering Doctor Bezirganian's treating relationship with Plaintiff, his specialty, and support elsewhere in the record, gave Bezirganian's opinion "considerable weight." *Id.* at p. 31.

To support his contention, however, Plaintiff points to a colloquy between the ALJ and himself during the ALJ Hearing, held on March 13, 2008. Pl.'s Br. at pp. 18-19. In that dialogue, Plaintiff told the ALJ that he was not mentally "fit for society" and was self-destructive. Tr. at p. 299. Plaintiff also quotes the following exchange:

> ALJ: What affect [sic] did your alcohol have on your capability of working and showing up for a job, and working steady, getting up the next day here on time? What did you say your alcohol did?
> PL.: Any time that I had a job, I always made it to work on time. That wasn't the reason for termination.
> ALJ: So the alcohol never played a part.
> PL.: No. I don't do that. I was working at the winery, and I didn't drink.

*Id.* at pp. 301-02.

While Plaintiff believes this quote supports his position, instead the opposite conclusion can easily be reached – that when Plaintiff was not drinking, he was able to perform work. This lends support to the ALJ's conclusion that if Plaintiff ceased his use of alcohol and drugs, he would not be disabled within the meaning of the Regulations. *See* Def.'s Br. at p. 11.

Regardless, there clearly exists substantial evidence in the record to support the ALJ's conclusion that Plaintiff would not be disabled if he did not abuse drugs and alcohol. Plaintiff's claim on this point is **denied**.

Secondly, Plaintiff claims that the ALJ failed to satisfy his duty to develop the record with regard to Plaintiff's functioning when he was not using drugs or alcohol. In Social Security cases, the ALJ "has a duty to 'affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Drake v. Astrue*, 443 Fed. App'x 653, at *2 (2d Cir. 2011) (quoting *Lamay v. Commiss.*, 562 F.3d 503, 508-09 (2d Cir. 2009)); *see also* 20 C.F.R. § 404.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.").

However, there is no indication whatsoever that ALJ Medicis failed to develop the record, or that he failed to make reasonable attempts to develop the record. The evidence before the Court indicates that on December 31, 2007, the ALJ sent letters requesting treatment records to the Soldiers and Sailors Memorial Hospital, the Pal-Mac Medical Center, and the Cayuga Addiction Recovery Services. Tr. at pp. 215-18. Plaintiff claims that he spent up to six months in jail, and yet those periods of sobriety were not evaluated because treatment records or medications provided during the incarceration are not a part of the record. However, the record shows that Plaintiff spent only two or three months in jail in the Summer of 2006, and there is no indication that Plaintiff received any treatment while in jail. *See id.* at pp. 255, 258, & 300. Further, whether records detailing Plaintiff's treatment and the medication prescribed while incarcerated exist or not, there is no reason to find that the ALJ should have known about this treatment and to request them from the prison. *See id.* at p. 300 (Plaintiff testified that prior to incarceration he "was living by [himself] and was not on meds . . . [and] when [he] got out of jail [he] went into treatment"). Thus, it is evident from the treatment records and the evidence before the Court that ALJ made every reasonable effort to fully develop the record. We **deny** Plaintiff's claim on this point.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that the Commissioner's decision denying Supplemental Security Income is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date: September 26, 2012
       Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge